SUMMIT MACHINE TOOL MANUFACTURING CORP., Plaintiff,

v.

GREAT NORTHERN INSURANCE COMPANY; Chubb & Sons, Inc.; and Ribbens Intl., Inc., Defendants.

Civ. A. No. L–94–139.

United States District Court, S.D. Texas, Laredo Division.

Dec. 6, 1994.

**1530**

H.N. Cunningham, III, Robert H. Bezucha, Pulley Cole Roberts Cunningham & Stripling, Dallas, TX, for Summit Machine Tool Mfg. Corp.

Russell W. Schell, Michael C. Lawrence, Schell Nichols Thompson Beene & Vaughn, Dallas, TX, for Great Northern Ins. Co., Chubb and Sons, Inc.

Robert J. Birnbaum, Austin, TX, for Ribbens Intern. Inc.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending before this Court is the Plaintiff's motion to remand this case to state court. This lawsuit relates to machinery owned by the Plaintiff that was damaged while in transit from Puebla, Mexico to Oklahoma City, Oklahoma. The damaged machinery was covered under a primary policy of insurance issued by Aseguradora Mexicana, S.A. (ASE-MEX). Defendant Ribbens International is a Mexican insurance broker which helped secure transportation insurance from ASE-MEX. Defendants Great Northern and Chubb allegedly underwrote and issued a supplemental insurance policy covering the shipments.

Great Northern and Chubb removed this case on the basis of diversity jurisdiction on August 15, 1994. Defendant Ribbens International did not consent to removal. The Plaintiff then moved to remand the case, alleging that all defendants had not joined in the removal. Great Northern and Chubb responded that Ribbens International's consent was not required because it was a nominal party. The Court gave the removing defendants leave to file an amended notice of remand.

■ Defendants Great Northern and Chubb filed their amended notice of removal on October 6, 1994. They alleged that Defendant Ribbens International need not join in the notice of removal because it is a "nominal party" against whom the Plaintiff has no chance of recovering. As the removing defendants, Great Northern and Chubb bear the burden of alleging and proving the non-joining party is a nominal party. *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815–16 (5th Cir.1993). The burden is a heavy one. The removing parties must prove there is absolutely no possibility that the Plaintiff will be able to establish a cause of action against the non-joining party. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983).

Great Northern and Chubb argue Summit cannot possibly recover against Ribbens International because Summit's parent corporation, LSB Industries, released Ribbens International from liability when it entered into a settlement and release agreement with ASEMEX dated March 10, 1994. The release states in relevant part:

LSB, their directors, officers, attorneys, employees, agents, representatives and their successors and assigns hereby release all their claims and causes of action, based on or arising out of any act or failure or refusal to act occurring on or

before the effective date of this Agreement, against ASEMEX, or Grupo Financiero Asemex Banpais, their representatives, officers, directors, attorneys, agents or employees and their successors and assigns. . . .

Great Northern and Chubb contend Ribbens International became the agent of ASEMEX when Ribbens and ASEMEX entered into a mercantile contract authorizing Ribbens to sell ASEMEX policies, collect premiums, and receive commissions for its efforts.[1] Therefore, they argue, the release applies to Ribbens International. They rely almost exclusively on the October 13, 1994 deposition testimony of Peter Ribbens, the principal shareholder and president of Ribbens International. The Plaintiff, on the other hand, maintains that this deposition testimony conclusively proves that Ribbens International was its agent, and not the agent of ASEMEX.

■ Ribbens' testimony supports both positions; however, the Court need not decide this "agency" issue to rule on the propriety of remand in this case. In construing a release agreement, the primary effort is to ascertain and give effect to the intention of the parties to the release. *Anheuser–Busch Companies, Inc. v. Summitt Coffee Co.*, 858 S.W.2d 928, 933 (Tex.Civ.App.—Dallas 1993, writ denied); *Sanus/New York Life Health Plan, Inc. v. Dube–Seybold–Sutherland Mgmt., Inc.*, 837 S.W.2d 191, 196 (Tex.Civ. App.—Houston [1st Dist.] 1992, no writ). The release must be considered as a whole and read in light of the surrounding circumstances. *Anheuser–Busch*, 858 S.W.2d at 933.

■ The evidence shows that neither party to the release intended to immunize Ribbens International or Peter Ribbens from liability. David Shear, Vice–President and general counsel of both LSB and Summit, negotiated and signed the settlement and release agreement on LSB/Summit's behalf. He states that "[a]t no time did anyone suggest that Ribbens International or Peter Ribbens was an Asemex agent or representative." LSB and Summit did not intend to release Peter Ribbens or Ribbens International. "Neither Peter Ribbens nor Asemex ever took the position that Ribbens International or Peter Ribbens was somehow released by the agreement." (Affidavit of David Shear, p. 2, para. 4).

The record contains no statement from ASEMEX indicating whether it ever viewed Ribbens as its agent, and whether it intended the agreement to release Ribbens from all liability. Even if Ribbens was ASEMEX's agent at the time Summit's machinery was insured, he could not have been its agent at the time the release was executed. This is because the mercantile agreement between Peter Ribbens and ASEMEX had expired by the middle of 1993, more than six months prior to the execution of the release. (Ribbens, pp. 72.21–73.9). Ribbens allowed it to expire because he no longer felt he could trust the company in the wake of its refusal to pay on Summit's claim. "I did not feel comfortable on continuing to do business with ASEMEX and have other clients be in the same situation, that if they have a claim that that claim would not be paid or it would be paid in one point in time with too many problems [sic]." (Ribbens, p. 18.9–.19). Because Ribbens or Ribbens International was no longer the agent or representative of ASEMEX at the time the release was executed, that document should not be read as applying to them.

■ Great Northern and Chubb assert a second theory for finding Ribbens International to be a nominal party. They contend that Summit should have sued Peter Ribbens personally instead of Ribbens International. They maintain Ribbens International S.A. de C.V. has no relation to this lawsuit because it is an administrative services company, not an insurance brokerage firm, whose sole purpose is to provide office support and accounting services for Peter Ribbens. Peter Ribbens, on the other hand, is an insurance broker who allegedly performed all services for LSB and Summit personally and individually.

This argument ignores reality. Peter Ribbens is the founder, president, and majority

---

**1.** This agreement is not in the record.

**1532**

shareholder of Ribbens International. (Ribbens, p. 15.15). When Ribbens first entered the insurance brokerage business, he did so under the business name "Ribbens International." (Ribbens, p. 68.17–.21). Although he now claims that Ribbens International is an "administrative services" company, he admits he continues to refer to the company as a brokerage firm. (Ribbens, p. 54.9–.13). When asked whether his brokerage services were done personally or as an employee of Ribbens International, Ribbens responded: "I cannot make the distinction; its one in the same person. I can honestly not make that distinction." (Ribbens, p. 69.17–.22). Indeed, until recently, all of his correspondence to clients, including LSB and Summit, was on Ribbens International letterhead. The letterhead identifies the company as "insurance agents." (Ribbens, p. 55.12–.26). Ribbens also admits that few, if any, of his clients know that Ribbens International is an administrative services company. They believe it is an insurance brokerage house. (Ribbens, p. 30.3–.10). They often address their correspondence to "Ribbens International, attention Peter Ribbens." (Ribbens, p. 54.9–.13).

While the Plaintiff could very likely have established a viable claim against Peter Ribbens personally, it has not chosen to do so. Nevertheless, the Court is convinced that, on this record, the plaintiff has a viable claim against Ribbens International. At the very least, Great Northern and Chubb have not met their burden of showing that Ribbens International is a nominal party against which the plaintiff has no chance of prevailing. *See Green*, 707 F.2d at 205. Therefore Ribbens International's consent was required for proper removal. *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir.1988). Without such consent, the remand motion must be and is GRANTED.