**Kimberly SPECIALE, Plaintiff,**

v.

**Katherine SEYBOLD, Defendant.**

**No. 96 C 2993.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 19, 1996.

---

William Robert Fahey and Daniel T. Stanton, Cooney & Conway, Chicago, IL, for Plaintiff.

John J. Mangan, Rooks, Pitts & Poust, Wheaton, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This matter arises on plaintiff Kimberly Speciale's motion to remand this action to state court for lack of subject matter jurisdiction and the motion of respondent Administrative Committee of Wal–Mart Stores, Inc. Associates Health and Welfare Fund ("Wal–Mart") for summary judgment.

### I. MOTION TO REMAND

After plaintiff suffered injuries in an automobile accident, she filed this action in the Circuit Court of the Sixteenth Judicial Circuit, Kane County against defendant Katherine Seybold. Plaintiff is a participant in Wal–Mart Stores, Inc. Associates Health and Welfare Fund (the "Plan"). The Plan is a self-funded employee welfare benefit plan sponsored and maintained by Wal–Mart Stores, Inc. and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). The Plan paid a total of $54,015.07 for plaintiff's medical expenses. After plaintiff agreed to settle her claims against defendant for $45,000.00, Wal–Mart sent plaintiff a notice that, pursuant to the terms of the Plan, it was entitled to the settlement funds as reimbursement for the medical expenses it had paid on behalf of plaintiff. Plaintiff filed a motion to adjudicate liens, seeking a declaration as to numerous liens asserted in the action, including the subrogation lien asserted by Wal–Mart and the liens of other health care providers. Wal–Mart then removed the action to federal court. Plaintiff moves to remand this action to state court for lack of federal subject matter jurisdiction.

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have

original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States." Wal–Mart asserts that this case raises a federal question under 28 U.S.C. § 1331, which confers jurisdiction over cases that "[arise] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In the ordinary case, "a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, 'for [i]t is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.'" *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir.1995) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). A defendant, therefore, cannot remove a case to federal court merely by asserting a federal question in his responsive pleading. *Id.* "The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir.1996).

The Supreme Court, however, has created an exception to the general rule that the plaintiff's complaint controls. The "complete preemption" doctrine holds that "to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law." *Rice*, 65 F.3d at 640 n. 2 (citing *Taylor*, 481 U.S. at 64, 107 S.Ct. at 1547). In *Taylor*, the Supreme Court held that the "complete preemption" exception applied to ERISA cases, explaining that in such cases "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Taylor*, 481 U.S. at 66–67, 107 S.Ct. at 1548. "[A] suit by a beneficiary to recover benefits from a covered plan ... falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes." *Id.* at 62–63, 107 S.Ct. at 1546.

Wal–Mart asserts that federal jurisdiction exists because plaintiff, an ERISA plan participant, seeks adjudication of a lien asserted by an ERISA plan to enforce the Plan's reimbursement provision. Wal–Mart argues that this pattern of facts falls within Section 502(a)(1)(B) of ERISA, which provides that a participant may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

In *Rice*, the Seventh Circuit addressed complete preemption in the ERISA context, holding that "a suit brought by an ERISA plan participant is an action to 'enforce his rights under the terms of a plan' within the scope of § 502(a)(1)(B) where the claim rests upon the terms of the plan or the 'resolution of the [plaintiff's] state law claim ... require[s] construing [the ERISA plan].'" *Rice*, 65 F.3d at 644–45 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988)). Although the Seventh Circuit has not addressed the precise question of whether a plaintiff's motion to adjudicate a lien asserted by an ERISA plan gives rise to federal question jurisdiction, several courts in this district have analyzed this issue subsequent to *Rice*. At least three district courts have found that federal question jurisdiction existed over the plaintiff's motion for adjudication. *Musinski v. Staudacher*, 928 F.Supp. 739, 743–44 (N.D.Ill.1996); *Fravel v. Stankus*, 936 F.Supp. 474, 477 (N.D.Ill.1996); *Cavanaugh v. Great Lakes Pet Supply, Inc.*, 1995 WL 765287, *3 (N.D.Ill. Dec. 23, 1995). Prior to *Rice*, at least one district court had found that no jurisdiction existed over a motion to adjudicate. *Washington v. Humana Health Plan, Inc.*, 883 F.Supp. 264 (N.D.Ill. 1995).

*Musinski v. Staudacher* involved a factual situation nearly identical to this case. The plaintiff, a participant under an ERISA employee benefit plan, received benefits from the plan for medical expenses resulting from an automobile accident. After settling with the tortfeasor who caused his injuries, the plaintiff moved in the state court for adjudi-

cation of a lien asserted by the plan under the contractual subrogation/indemnification provision contained in the plan. The defendant then removed the case to federal district court. The court applied the analysis of *Rice* and concluded as follows:

> In ERISA § 502(a)(1)(B) terms, Musinski's claim may perhaps not be one "to recover benefits," and perhaps he might be characterized as resisting Blue Cross' effort to enforce its rights under the Plan rather than seeking to enforce his own, but it is surely the case that in the language *Rice* adapted from *Lingle*, the "resolution of the [plaintiff's] state law claim ... requires construing [the ERISA plan]."

*Musinski*, 928 F.Supp. at 743–44. The court therefore held that removal of the action to federal court had been proper.

Plaintiff asserts that *Musinski*'s rationale should be rejected because court's analysis did not consider the Supreme Court's recent holding in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) in applying *Rice*. *New York State Conference*, however, addressed conflict preemption under Section 514 of ERISA, rather than complete preemption under Section 502(a) and hence is inapplicable to the analysis of plaintiff's motion to adjudicate. Plaintiff also urges that the Illinois Supreme Court decision *Scholtens v. Schneider*, 173 Ill.2d 375, 219 Ill.Dec. 490, 671 N.E.2d 657 (1996), which applied *New York State Conference*, demonstrates that federal jurisdiction does not exist over this case. *Scholtens*, however, similarly addressed conflict preemption under ERISA in determining whether Section 514 preempts application of the common fund doctrine to self-funded employee benefit plans. *Id.*, 219 Ill.Dec. at 493, 671 N.E.2d at 660. Moreover, even if *Scholtens* were binding on federal courts, it would not help plaintiff's argument because the court specifically noted that the trial court "did not adjudicate the Trustees' rights under the terms of either the ERISA plan or the subrogation agreement, but simply applied the common fund doctrine to the facts before it." *Id.* Unlike the facts of *Scholtens*, jurisdiction exists in this case because adjudication of Wal–Mart's subrogation lien "require[s] construing [the ERISA plan]."

Similar to *Musinski*, plaintiff's motion to adjudicate does not appear to literally seek enforcement of her rights under the Plan. What plaintiff really seeks is a judicial determination of who is entitled to what part of her settlement. In essence, she is asserting her right not to pay back the Plan for expenses it paid on her behalf. A component of the analysis of plaintiff's motion to adjudicate will involve construction of the Plan's reimbursement provision and, as a result, plaintiff's claim is completely preempted by Section 502(a) of ERISA.

### I. MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of summary judgment is to assess the proof in order to see whether there is a need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, all reasonable inferences to be drawn from the underlying facts are viewed in favor of the party opposing the motion. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355; *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir.1993). If no reasonable jury could find for the party opposing the motion, it must be granted. *Mills v. First Federal Savings & Loan Ass'n of Belvidere*, 83 F.3d 833, 839 (7th Cir.1996); *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 931 (7th Cir.1995). The mere existence of a scintilla of evidence in support of a plaintiff's position will not be sufficient to withstand a motion for summary judgment; there must be enough evidence on which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Wal–Mart seeks a judgment that it is entitled to the entire proceeds of the settlement agreement between plaintiff and defendant. Wal–Mart asserts that under the terms of the Plan plaintiff is obligated to reimburse Wal–Mart for benefits it paid out for her medical expenses. The Plan states as follows:

The PLAN shall have the right to reduce benefits otherwise payable by the PLAN or recover benefits previously paid by the PLAN to the extent of any and all of the following:

A. Any payment resulting from a judgment or settlement, or other payment or payments, made or to be made by any person or persons considered responsible for the condition giving rise to the medical expense or by their insurers, regardless of whether the payment is designated as payment for such damages . . . .

Subsequent to the Plan's payment of plaintiff's medical and hospital expenses arising out of her accident, plaintiff executed an acknowledgment that she would reimburse the Plan for expenses it paid out on her behalf out of any recovery she obtained from a third party responsible for her medical condition. The Plan provides Wal–Mart with discretionary authority to resolve all questions concerning the administration and interpretation of the Plan. Wal–Mart paid out over $54,000 in medical benefits on plaintiff's behalf, and it seeks reimbursement in full amount of the $45,000 settlement.

Plaintiff's motion to adjudicate liens identifies 14 other entities that have asserted liens totaling $16,512.84 in this action. Neither plaintiff nor Wal–Mart explains how plaintiff incurred medical expenses not covered by the Plan. In addition, plaintiff notes that her attorney has asserted a lien for fees incurred in connection with this action.

■ Wal–Mart argues that it is entitled to summary judgment because it reasonably construed the Plan in determining that plaintiff was obligated to reimburse the Plan in the amount of her settlement. Wal–Mart correctly asserts that since the Plan gives Wal–Mart discretionary authority to construe the Plan, judicial review is limited to whether Wal–Mart's determination was arbitrary and capricious. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

The principal question raised is whether plaintiff's $16,000 in unpaid medical expenses bars affirming Wal–Mart's decision that it is entitled to the full settlement amount. The "make-whole" rule, if it were applied here, would prevent Wal–Mart from asserting its lien until plaintiff had been made whole—*i.e.,* she had paid her medical expenses with the settlement funds. In addressing the merits of applying the make-whole rule to an ERISA plan's right of subrogation, the Seventh Circuit has stated as follows:

It is true that rejecting [the] make whole [rule] would bring subrogation closer to assignment, but that would not necessarily be a bad thing. Assignment, by shifting the insured's tort rights to the insurance company, reduces the price of insurance and thus enables the insured to obtain more coverage, in effect trading an uncertain right, which is just the sort of trade that people seek through insurance. (The counterargument is that the make-whole rule is most likely to apply in a case of catastrophic loss, such as the present, where full insurance is rare.) It can also be argued against the make-whole rule that it is administratively more complex, requiring the medical insurer to calculate the insured's total medical and nonmedical loss, and therefore that it makes insurance (or its equivalent in this case) more expensive to the insured—and makes it more expensive to him for the additional reason that he will have to pay for the additional coverage that the rule in effect provides. And no one's demand for insurance is unlimited. The counterargument on the administrative-complexity front is that subrogation (which the make-whole rule would eliminate in cases such as the present) involves an agency problem because of the insured's entitlement to any excess recovery that the insurer-subrogee obtains. The insurer, having no (or very little) interest in making money for the insured,

may fail to press hard for an excess recovery. To which it can be replied that the make-whole rule simply shifts the disincentive to press hard from the insurer to the insured.

*Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1298 (7th Cir.1993). Ultimately, however, the *Cutting* court did not determine whether the facts of the case warranted application of the make-whole rule in interpreting ERISA plans because it concluded that the administrator was not unreasonable to disclaim the make-whole rule in interpreting the plan. Subsequent to *Cutting*, however, other district courts in this circuit have considered the applicability of the make-whole doctrine to the subrogation rights of ERISA plans. *Murzyn v. Amoco Corp.*, 925 F.Supp. 594, 601 (N.D.Ind.1995) (applying the make-whole doctrine); *Sanders v. Scheideler*, 816 F.Supp. 1338, 1346–47 (W.D.Wis.1993) (applying the make-whole doctrine), *aff'd*, 25 F.3d 1053 (1994).

Under *Cutting*, the relevant inquiry is whether Wal–Mart acted unreasonably in requiring plaintiff to reimburse the plan in the entire amount of the settlement, although doing so would leave plaintiff less than whole. In other words, the same question the *Cutting* court asked applies here: was it reasonable for the Plan to fail to apply the make-whole rule, regardless of whether the rule is a viable interpretive principle for ERISA plans? From the information provided in connection with this motion, it is not possible to determine whether the Plan acted reasonably. Wal–Mart does not state whether plaintiff's additional medical expenses were considered in the Plan's decision to seek reimbursement in the entire amount of the settlement. Moreover, it appears that it would be inequitable to enforce Wal–Mart's determination. Wal–Mart has taken no steps to pursue the tortfeasor, while plaintiff hired an attorney and procured a settlement of $45,000. Yet if Wal–Mart's reimbursement determination is deemed reasonable, Wal–Mart would receive $45,000, and plaintiff, an individual who has both health insurance and a $45,000 settlement, would face over $16,000 in medical bills and an unpaid lawyer. Nevertheless, additional facts may demonstrate that Wal–Mart's determination was entirely reasonable. At this point, however, there are to many unanswered questions to grant summary judgment to Wal–Mart on its subrogation lien.[1]

A hearing on plaintiff's motion to adjudicate will be necessary to resolve the remaining factual issues. All interested parties are directed to file hearing briefs stating their positions with respect to plaintiff's motion on January 30, 1997.

IT IS THEREFORE ORDERED that:

(1) Plaintiff Kimberly Speciale's motion to remand [11] is denied.

(2) Respondent Wal–Mart's motion for summary judgment [3] is denied.

(3) On January 30, 1997 at 9:15 a.m., the parties shall file hearing briefs in open court. A status hearing is set for February 6, 1997 at 9:15 a.m.

---

1. In addition, the existence of other lienholders weighs against granting summary judgment to Wal–Mart. Wal–Mart argues that these other liens are irrelevant for purposes of its motion because its lien possesses priority over the other liens by virtue of the fact that the Plan is an ERISA plan. Wal–Mart cites *Auto Owners Ins. Co. v. Thorn Apple Valley Inc.*, 31 F.3d 371, 374–75 (6th Cir.1994), for the proposition that the interest of an ERISA plan takes precedence over the interests of non-ERISA entities with respect to a common fund. *Thorn Apple Valley*, however, addressed the different situation of where an ERISA plan and an automobile insurance policy both provide coverage over a particular claim and both the policy and the plan purport to hold to make the other primarily liable for the payment of medical expenses on behalf of the insured. The Sixth Circuit held that the terms of the ERISA plan would be given full effect to comply with ERISA's goal of safeguarding the financial integrity of qualified plans by shielding them from unanticipated claims. To the extent that this case would provide an analogy to the present determination of whether Wal–Mart's lien possess priority over the other liens, however, the Seventh Circuit follows a different rule and will apportion liability between the policy and the plan on a pro rata basis. *Winstead v. Indiana Ins. Co.*, 855 F.2d 430 (7th Cir.1988).