**Timothy TRAYNOR and Luann Traynor, Plaintiffs,**

v.

**Richard O'NEIL, General Casualty Co. of Wisconsin, and Thomas & Betts Corporation, Defendants.**

**No. 99–C–0773–C.**

United States District Court, W.D. Wisconsin.

March 7, 2000.

Ardell W. Skow, Doar, Drill & Skow, Office Park, Baldwin, WI, for Timothy Traynor and Luann Traynor.

Edmund Manydeeds, III, Eau Claire, WI, for General Casualty Co. of Wisconsin and Richard O'Neil.

Donald Chance Mark, Fafinski Mark & Johnson, P.A., Eden Prairie, MN, for Thomas & Betts Corporation.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action, Timothy and Luann Traynor sued defendants Richard O'Neil and General Casualty Company of Wisconsin for injuries arising from an automobile accident. Plaintiffs added defendant Thomas & Betts Corporation as a defendant pursuant to Wisconsin law to enable the company to assert its subrogation rights. Defendant Thomas & Betts Corporation contended that plaintiffs were adding it to the case as a defendant not to protect its subrogation rights as they alleged but to estop it from asserting those rights. Defendant Thomas & Betts argued that this was a separate and independent claim implicating ERISA-based federal question jurisdiction and removed this

case to federal court. Plaintiffs have moved for a remand of the proceedings to state court and for an award of attorney fees and costs. Because I find that this court lacks subject matter jurisdiction over plaintiffs' claims, plaintiffs' motion to remand the case will be granted, as will their motion for an award of attorney fees and costs.

## ALLEGATIONS OF FACT

On May 19, 1995, plaintiff Timothy Traynor was injured when his motorcycle collided with a vehicle driven by defendant Richard O'Neil. O'Neil was insured by General Casualty Company of Wisconsin. Plaintiff was a participant in an employee health plan sponsored by Thomas & Betts Corporation. Medical payments were made to plaintiff under the plan.

On March 18, 1996, plaintiff and his wife, Luann Traynor, filed this action in the Circuit Court for Pierce County, Wisconsin, suing O'Neil and General Casualty Company of Wisconsin for negligence.

On November 8, 1999, after settlement negotiations broke down, plaintiffs added defendant Thomas & Betts Corporation as a defendant pursuant to Wis. Stat. § 803.03(2) because its potential subrogation interest made it a necessary party.

On December 8, 1999, Thomas & Betts Corporation filed a notice of removal in this action pursuant to 28 U.S.C. § 1441(c) and 28 U.S.C. § 1331, contending that plaintiffs had stated a separate and independent claim against it concerning an ERISA-based plan.

## OPINION

28 U.S.C. § 1441(c) provides that, "whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." Section 1331 provides federal jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. Thus, in order for removal of this action to be proper, the claim against Thomas & Betts Corporation must be separate and independent and raise a federal question. See 28 U.S.C. § 1441(c).

Before analyzing the propriety of removal under 28 U.S.C. § 1441(c), it is important to clarify the nature of plaintiffs' claim against defendant Thomas & Betts Corporation. Defendant Thomas & Betts was joined by amended complaint as a necessary party under Wis. Stat. § 803.03(2), which provides that, "[a] party asserting a claim for affirmative relief shall join as parties to the action all persons who at the commencement of the action have claims based upon subrogation to the rights of the party asserting the principal claim." In addition to joining defendant because of its claimed subrogation interest, plaintiffs asserted that defendant's subrogation rights were subordinate to plaintiff Timothy Traynor's right of recovery. Am. Compl., dkt. # 16, ¶ 13. Further, plaintiffs asserted that defendant's subrogation claims were "precluded under the doctrines of unclean hands, equitable estoppel and waiver." Am. Compl. ¶ 14. Defendant characterizes plaintiffs' asserted defenses as affirmative claims "for equitable relief in order to prevent Thomas & Betts from asserting any right to subrogation or reimbursement under the ERISA plan." Def.'s Br. in Opp'n, dkt. # 9, at 2. In response, plaintiffs argue that the doctrines of waiver, estoppel and unclean hands were raised in the amended complaint as affirmative defenses to defendant's subrogation claim. Plaintiffs deny that they are seeking an injunction against defendant or any other form of equitable relief.

I conclude that plaintiffs have the better argument. Defendant Thomas & Betts was joined as a necessary party because of its potential subrogation interest. At the same time, plaintiffs chose to raise affirmative defenses to any subrogation claim defendant might assert. Plaintiffs have not

asserted a claim against defendant; all plaintiffs have done is join a necessary defendant under state law and tip their hand as to what defenses they would raise if defendant asserts that its subrogation interest has priority over plaintiffs' interest. Raising a defense against a possible claim is not the same as asserting a claim. To find otherwise would deny plaintiffs' status as masters of their complaint and turn the well-pleaded complaint rule on its head.

### A. Separate and Independent Claim

The standard for a "separate and independent claim or cause of action" under 28 U.S.C. § 1441(c) was established by the United States Supreme Court in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 95 L.Ed. 702 (1951) (cited with approval in *Lewis v. Louisville & Nashville Railroad Co.*, 758 F.2d 219, 221 (7th Cir.1985)). "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under 1441(c)." *Finn*, 341 U.S. at 14, 71 S.Ct. 534. In other words, "[i]t is well-settled that a claim is not 'separate and independent' if it arises from the same loss or actionable wrong." *Lewis*, 758 F.2d at 221. Further, "[e]ven if more than a single wrong exists, claims are not 'separate and independent' if the wrongs arise from an interlocked series of transactions." *Id.* The purpose of the "separate and independent claim" requirement is to limit removal from state courts. *See Finn*, 341 U.S. at 10–11, 71 S.Ct. 534.

In the present case, the single wrong for which plaintiffs seek relief is personal injury resulting from the alleged negligence of defendant O'Neil. Defendant Thomas & Betts's potential subrogation claim is indivisible from this negligence action since defendant is merely asserting a right to share in any damages awarded to plaintiffs. State law makes defendant a necessary party to the negligence action. For that reason, its presence in the suit is considered necessary for a just adjudication of the principal negligence claim.

Defendant argues that, "[o]n similar facts, courts in this circuit have found adverse claims concerning subrogation rights to be 'separate and independent' for purposes of removal under 28 U.S.C. § 1441(c)." Def.'s Br. in Opp'n, dkt. # 9, at 4. However, the cases defendant cites in support of this proposition are distinguishable on their facts. In *Shannon v. Shannon*, 965 F.2d 542 (7th Cir.1992), for example, a child who was severely injured when she nearly drowned filed a personal injury action in state court against her parents, their insurer, her next-door neighbors and their insurer. The mother's employee health plan intervened to assert subrogation and reimbursement claims against the plaintiff and her parents because it had paid part of the medical expenses. The plaintiff and her parents counterclaimed against the plan for termination of payments. The plan removed the case to federal court under 28 U.S.C. § 1441(c) and the district court denied plaintiff's motion to remand. In affirming the district court's denial of remand, the Court of Appeals for the Seventh Circuit stated that the plan's subrogation claim, "more than likely invoked ERISA-based removal," but if it did not, the plaintiff and her parents' counterclaims against the plan surely did. *Id.* at 546. Because removal had been sought under 28 U.S.C. § 1441(c), the court of appeals must have found that a separate and independent claim existed, although it did not discuss this point. However, *Shannon* is distinguishable from this case, which does not involve any counterclaims. In fact, plaintiffs have made no claims against defendant whatsoever. They have merely joined defendant as a necessary party and identified what affirmative defenses they will raise should the defendant assert a subrogation interest.

Defendant cites *Scianna v. Furlong*, 56 F.Supp.2d 1000 (N.D.Ill.1999), for the proposition that a petition to adjudicate a lien presents a separate and independent

claim, In *Scianna*, a father filed suit in state court against his employee benefit plan on behalf of his children, who had been injured in an automobile accident. As part of the suit, he petitioned to compel the plan to pay medical bills and to prevent it from asserting subrogation rights against his sons' recovery under a settlement agreement. The court found that the petition was in fact a complaint seeking affirmative relief from the plan. Therefore, the court concluded, the petition represented a separate and independent claim. By contrast, in this case, plaintiffs have not sought to recover benefits from defendant under the plan. (Moreover, as a district court opinion, *Scianna* has no precedential value.) In fact, plaintiffs have no need to compel payment under the plan, because they have already received payment. They are asserting no affirmative claims against defendant; they merely joined defendant as a necessary party because of its claimed subrogation interest.

Finally, defendant relies on *Fravel v. Stankus*, 936 F.Supp. 474 (N.D.Ill.1996), to support its argument that plaintiffs have asserted a separate and independent claim against it. (Again, it is worth noting that *Fravel* is not binding precedent on this court.) In *Fravel*, after plaintiffs and defendants settled a negligence suit brought in state court, plaintiffs filed a motion to adjudicate a lien held by their insurer. The insurer removed the case to federal court, which court denied plaintiffs' motion to remand, holding that the motion to adjudicate liens was preempted completely by ERISA. The court went on to reject plaintiffs' argument that the motion was not a separate and independent claim and thus not removable, explaining that a motion to adjudicate a lien was properly treated as a declaratory judgment action and thus separate and independent. The *Fravel* case has been called into question by the Court of Appeals for the Seventh Circuit. *See Speciale v. Seybold*, 147 F.3d 612, 617 (7th Cir.1998) ("The district court judge did not necessarily err in relying on *Fravel v. Stankus* . . . because the district

judge did not have the advantage of the *Blackburn* decision at the time"). In *Blackburn v. Sundstrand*, 115 F.3d 493, 494 (7th Cir.1997), the court of appeals noted that a petition to apportion a settlement fund "invoked the ancillary jurisdiction of the state court and was part of the original, non-removable action." Thus, even if this case involved apportionment of a settlement fund, it would not present a claim separate and independent from the principal negligence action.

■ Plaintiffs have not joined a separate and independent claim against defendant. Therefore, removal under 28 U.S.C. § 1441(c) was improper.

### B. Federal Question Jurisdiction

■ Even if plaintiffs had joined a separate and independent claim against defendant, removal would have been improper for lack of a federal question. When a defendant removes a case to federal court, asserting that ERISA creates a basis for federal question jurisdiction, the determination whether jurisdiction exists "is based upon the well-pleaded complaint rule, the ERISA 'complete preemption' exception to that rule, and the defense of 'conflict preemption' under ERISA." *Speciale*, 147 F.3d at 614 (citing *Blackburn*, 115 F.3d 493 (7th Cir.1997); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th Cir.1996); *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995)).

■ "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for it is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Jass*, 88 F.3d at 1486 (quoting *Rice*, 65 F.3d at 639). Thus a defendant may not assert that a federal court has original jurisdiction over an action by raising a federal question in responsive pleadings. *See id.*

However, there is an exception to the well-pleaded complaint rule where Con-

gress has completely preempted an area of state law. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126; *Speciale*, 147 F.3d at 615. "Complete preemption permits 'recharacterization' of a plaintiff's state law claim so that removal is proper," *Speciale*, 147 F.3d at 615, even if the complaint does not include a federal basis for jurisdiction. *See also Jass*, 88 F.3d at 1487. In *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the United States Supreme Court held that all state actions that fall within the scope of § 502(a) of ERISA are completely preempted and come within the original jurisdiction of the federal courts. (In effect, "the complete preemption doctrine 'is not a preemption doctrine but rather a federal jurisdiction doctrine.'") *Speciale*, 147 F.3d at 615 (quoting *Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir.1989)). Therefore, even if a plaintiff's complaint does not mention § 502(a), the case may be removed to federal court if its claims can be fairly recharacterized as falling within its scope.

In contrast to complete preemption, the doctrine of conflict preemption holds that any state law that may "relate to" an ERISA-governed employee benefit plan is preempted by ERISA, but conflict preemption does not confer federal question jurisdiction (although it may be raised as a defense in state court actions). Conflict preemption is based upon § 514(a) of ERISA, which provides that ERISA preempts "any and all State laws insofar as they relate to" any ERISA-governed plan.

Therefore, the first question that must be answered to determine whether this court has federal question jurisdiction over plaintiffs' state law claim is whether their claim may be fairly recharacterized as arising under § 502(a) or whether it merely "relate[s] to" an ERISA plan under § 514(a). Section 502(a) empowers plan participants to bring suit to recover benefits, to enforce rights and to clarify rights to future benefits under the terms of an ERISA-governed benefit plan. In determining whether a state law claim is within § 502(a)'s scope, three factors are relevant: (1) whether the plaintiff is eligible to bring a claim under § 502(a); (2) whether the claim falls within an ERISA provision that can be enforced via § 502(a); and (3) whether the state law claim can be decided without interpreting the ERISA-governed benefit plan. *See Speciale*, 147 F.3d at 615 (citing *Jass*, 88 F.3d at 1488).

In this case, because plaintiff Timothy Traynor is a participant in an ERISA-governed benefit plan, he is eligible to bring a claim under § 502(a). However, his state-law negligence claim against the alleged tortfeasor and the alleged tortfeasor's insurance company is not one that falls within an ERISA provision that can be enforced via § 502(a). Section 502(a) governs claims to benefits from an ERISA-based plan. *See Blackburn*, 115 F.3d at 495. Plaintiffs are not making a claim to benefits. They have already received benefits under the plan and are not seeking additional ones.

Defendant argues that because plaintiffs have raised affirmative defenses to defendant's potential assertion of the priority of its subrogation interests, their claim is really an action for equitable relief, specifically, a declaratory judgment action that falls under § 502(a)(3). However, I have already found that plaintiffs' assertion of potential affirmative defenses does not amount to the assertion of an affirmative claim for equitable relief. For this reason, *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir.1993), which defendant cites in support of its argument for federal question jurisdiction, is distinguishable. *Cutting* involved a declaratory judgment action brought by an employee against his company seeking determination of his wife's entitlement to coverage for medical expenses under the company-administered employee benefits plan. *See id.* at 1294–95.

Finally, defendant contends that its subrogation claim will require interpretation

of its subrogation and reimbursement rights under its ERISA-based plan. Def.'s Br. in Opp'n, dkt. # 9, at p. 3–4. Even if it does, it does not follow that federal question jurisdiction exists over plaintiffs' claim against the alleged tortfeasor and the alleged tortfearsor's insurance company. In *Blackburn*, 115 F.3d at 494, two beneficiaries of an ERISA-governed plan who were injured in an automobile accident filed suit in an Illinois state court against the driver of the other car and reached a settlement agreement. The plaintiffs then filed a petition for apportionment of the fund between themselves and the ERISA-governed plan. The fund removed the case to federal court, only to have its action criticized by the court of appeals, which stated that "not even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of a plan." *Id.* The court held that because "neither the original tort action nor the petition to adjudicate adverse claims to the settlement fund sought a payment from the plan, Section 502 is irrelevant." *Id.* at 495. Similarly, in this case plaintiffs are not seeking payment from the plan in any manner; rather, it is the plan that may seek payment from any recovery plaintiffs receive from the tortfeasor and the tortfeasor's insurance company. That defendant's right to such a payment may depend on the terms of the plan is insufficient to invoke federal question jurisdiction under § 502(a)(3). *See id.; see also Speciale*, 147 F.3d at 616 (ERISA-governed plan's assertion of subrogation rights to settlement fund from automobile accident tort claim did not arise under § 502(a); therefore, removal to federal court improper).

In conclusion, no federal question is present in this case. Therefore, removal under 28 U.S.C. § 1441(c) was improper.

### C.  *Attorney Fees and Costs*

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The standard for awarding attorney fees and costs under § 1447(c) is less strict than under the more familiar Fed.R.Civ.P. 11; the statute does not require a showing of bad faith or frivolousness. *See Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321 (10th Cir.1994); *Morgan Guaranty Trust Co. v. Republic of Palau*, 971 F.2d 917 (2d Cir.1992); *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443 (9th Cir.1992). Section 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees." *Morgan*, 971 F.2d at 924.

Thus, a district court has the discretion to "award costs pursuant to an order remanding a case *either* on the grounds that the court lacks subject matter jurisdiction or on the basis that the procedures for removal were not satisfied." *Tenner v. Zurek*, 168 F.3d 328, 330 (7th Cir.1999) (emphasis added). As discussed above, this court lacks subject matter jurisdiction over this case. In addition, defendant's removal was wrong procedurally. These procedural errors alone would justify remand. *See In re Continental Casualty Co.*, 29 F.3d 292, 293 (7th Cir.1994) ("Section 1447(c) thus sets up two categories of reasons for remand: a defect in the removal procedure and the absence of subject matter jurisdiction.").

"As a general rule, all defendants must join in a removal petition in order to effect removal." *Northern Ill. Gas Co. v. Airco Indus. Gases Div. of Airco, Inc.*, 676 F.2d 270, 272 (7th Cir.1982). Defendants must express their unanimous support to the court " 'within thirty days after the receipt by the defendant of the copy of the initial pleading' containing the removable claim." *Production Stamping Corp. v. Maryland Casualty Co.*, 829 F.Supp. 1074, 1076 (E.D.Wis.1993) (quoting 28 U.S.C. § 1446(b)). "The thirty-day time limitation is not jurisdictional and may be waived.... Nevertheless, the time limitation is mandatory and must be strictly construed." *Id.* (citations omitted). There are, however, three exceptions to this rule:

1) where a defendant was not served with process at the time the removal petition was filed; 2) where a defendant is merely a nominal or formal party-defendant; or 3) where the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c). *See id.* at 1076 n. 2. If all defendants do not join in or consent to the removal petition within the thirty-day time period and none of these exceptions applies, the district court must remand the case. *See id.* at 1076 (citing 28 U.S.C. § 1447(c)).

Defendant Thomas & Betts removed this action independently, without obtaining the unanimous support of the other defendants within the thirty-day time period. In fact, defendants O'Neil and General Casualty have filed a memorandum with this court in support of plaintiffs' motion to remand. Defendant invokes the third exception to the unanimous consent rule regarding separate and independent claims, but it is inapplicable because plaintiffs have not made a separate and independent claim against defendant. Thus, defendant failed to satisfy the rule requiring consent of all defendants and removal was procedurally improper.

Further, 28 U.S.C. § 1446(d) provides that, "[p]romptly after filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." However, "[t]he filing of a copy of the notice of removal in the state court is a procedural and ministerial act and a number of federal courts have held that a failure to do so will not defeat the court's subject matter jurisdiction." 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3736 (3d ed.1998). Nonetheless, many jurisdictions also regard the filing of the notice with the state court as a necessary step to effect removal. *See id.* § 3737 ("Accordingly, the sounder rule, and the one most consistent with the language of Section 1446(d) of Title 28, is that removal is not effective until all the steps required by the federal statute have been taken by the defendant."); *see also Zeglis v. Sutton,* 980 F.Supp. 958, 961 (N.D.Ill.1997) ("Removal is effective when notice of removal is filed in state court."). Therefore, the filing requirement should not be ignored.

Defendant Thomas & Betts Corporation filed its notice of removal with this court on December 8, 1999. It did not file a copy of this notice with the Circuit Court of Pierce County until February 4, 2000. This amounts to a 58–day delay in effecting removal. Defendant's removal violated § 1446(d)'s promptness requirement.

Finally, defendant failed to comply with Rule 81(c). Rule 81(c) provides that:

> In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.

Defendant Thomas & Betts was served with the amended summons and complaint on November 8, 1999. Defendant removed the case to federal court on December 8, 1999. Under the formula provided in Rule 81(c) (excluding Saturdays and Sundays as required by Rule 6), defendant was required to file its answer by December 15, 1999. Thomas & Betts filed its answer on January 10, 2000. This amounts to a delay of 26 days. Although not a basis for remand, the delay is another example of a procedural violation by defendant.

Courts have been particularly unsympathetic to defendants who remove to federal court by claiming that ERISA preempts state law claims. *See, e.g., Gray v. New York Life Ins. Co.,* 906 F.Supp. 628, 629 (N.D.Ala.1995) ("[t]he ERISA re-

moval knees continue to jerk. There is not enough room here to list the growing number of cases in which some defendant has stretched beyond all reason the concept of 'super-preemption' by using his 'super-imagination' to find a remote connection to ERISA."). Moreover, in *Gray,* the court noted that in light of 1988 amendments to § 1447(c), courts have greater discretion in awarding fees for improper removal in order to send a message to defendants: "The message was: 'Remove at your peril!' " *Id.* at 630.

■ In removing this case, defendant was wrong as a matter of substantive law and ignored procedural rules. These errors make it proper to award plaintiffs reasonable attorney fees and costs incurred as a result of their response to defendant Thomas & Betts Corporation's removal effort.

### ORDER

It is ORDERED that:

1. Plaintiffs Timothy and Luann Traynor's motion to remand is GRANTED;

2. Plaintiffs' motion for award of attorney fees and costs is GRANTED;

3. Plaintiffs may have until March 23, 2000, in which to submit a form of judgment listing the reasonable attorney fees and costs incurred in responding to defendant's removal;

4. Defendant Thomas & Betts Corporation may have until March 30, 2000, to file an objection to the form of judgment;

5. The clerk of court is directed to return the record in case number 99–C–0773–C to the Circuit Court for Pierce County, Wisconsin.